DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:04 CR 345 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| Lynn Foster, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

I. Introduction

The defendant is before the Court for re-sentencing as directed by the Sixth Circuit and

following the *Booker* decision.  The defendant was convicted, following a jury trial, for possession of a

firearm as a convicted felon in violation of 18 U.S.G. §922 (g)(1).  The presentence report indicated an

offense level of 20 and a Criminal History of V.  The Court reduced the Criminal History category to

IV which called for a range of 51 to 63 months.  The Court also imposed an alternative sentence of 24

months in response to the Sixth Circuit recommendation set forth in *United States v. Koch, No. 0*2-

6278, 2004 WL 1870438 (6th Cir. August 13, 2004).[1]

---

[1]The *Koch* decision stated in part:

> In the interest of judicial economy, and pending a definitive ruling by the
> Supreme Court, we recommend that the district courts within this circuit also announce
> at the time of sentencing a sentence pursuant to 18 U.S.C.A. Section 3553(a)...

> This decision was not selected for publication.  An opinion was issued at 383

(continued...)

(1:04 cr 345)

The presentence report accurately describes the Offense Conduct in paragraphs 6 and 7 which

follow:

The defendant was wearing only a long shirt and underpants and requested that the officers allow her to put on additional clothing.  They agreed and escorted her to the bedroom area to get dressed.  After she put on her pants, she began looking around the bedroom and her furtive behavior led officers to put her in handcuffs.  Officers asked the defendant if there were any weapons in the apartment to which she responded, "No, I ain't got no weapons in my house!"  Officers continued to search for weapons which she may have been looking for while running around her bedroom.  An officer noticed a handgun in plain view near the bed on a shelf under the front window.  The weapon was loaded with five live rounds of .38 caliber ammunition.  When officers confronted the defendant with the finding of the weapon and her denial of such, she replied, "Oh, my father gave me that gun.  I forgot it was here."  The defendant was subsequently arrested.

There are no identifiable victims.  However, when individuals with felony convictions continue to be in possession of weapons illegally, society is endangered.

In a postconviction interview, the defendant gave a statement regarding her conduct as follows:

"I had the gun which I got from my grandfather who died March of 2003.  His property was in the apartment I was staying at.  I knew the gun was there, but I didn't know it was an offense to have it."

The presentence report was prepared by Kimberly Wessel, a United States Probation Officer

and she stated as follows:

This case presents a 36 year old female before the Court for sentencing after being found guilty of felon in possession of a firearm.  The defendant has an 11th grade education.  Her most recent employment was with a temporary service.  She reported no assets.  She is the mother of 9 children (3 have been adopted).  Her children are all

---

[1](...continued)
F.3d 436 (6th Cir. 2004); however, certiorari was granted and the judgment was vacated by *Koch v. United States*, __U.S.__, 125 S.Ct. 1944 (2005), in light of *Booker*.

(1:04 cr 345)

in custody of other family members with the exception of her youngest child, Miracle.
The defendant and her husband share custody of Miracle.  The defendant remains
married but is unsure of the status of her marriage.  The defendant's criminal history is
lengthy.  It includes convictions for robbery, soliciting (2), possession of drugs,
receiving stolen property, theft (3), disorderly conduct, and attempted conspiracy to
commit robbery.  She has misdemeanor charges pending in Cleveland Municipal Court
for endangering children and traffic offenses.   With this lengthy criminal history, the
defendant has served very little time in custody.  Her probation has been continued after
numerous violations and new convictions.  She is currently on active probation in
Cuyahoga County Court of Common Pleas and inactive probation with Shaker Heights
Municipal Court.  According to her Cuyahoga County probation officer, the defendant
is a very sad case.  The probation officer revealed that she has worked with the
defendant for a long time and has a good grasp on the defendant's behavior.  She felt
that the defendant was doing well on supervision with the exception of the new arrests.
She believes that she remained sober for 3 years.  With this in mind and with the
sentence facing the defendant in this case, this officer recommends the low end of the
sentencing range in this case.

## II.  The Analysis Required Under *Booker*

The Court provided no explanation for the alternative sentence of 24 months.  It is now evident

that the imposition of the alternative sentence, as directed by the Circuit, without an explanation of the

alternative sentence in the context of 18 U.S.C. §3553(a), is insufficient to permit the Sixth Circuit to

engage in the "reasonableness" standard of review as dictated by *Booker*.  At the time the Court

pronounced the alternative sentence, it did not have the benefit of the *Booker* teachings.  As a

consequence, the Court will revisit the sentence in the context of 18 U.S.C. §3553(a).

## III.  The Section 3553 (a) Review

(1)   The nature and circumstances of the offense and the history and characteristics of

the defendant.

The nature and circumstances of the offense are outlined above.  In the Court's view,

3

(1:04 cr 345)

the fact that the loaded firearm was not used in the contemporaneous commission of another crime

justifies consideration of a variation below the advisory guideline calculation.  The defendant's state of

nervousness when the arresting officers entered her apartment certainly indicates that she knew the

weapon was in the apartment and raises an issue as to her declaration that she did not know it was an

offense to possess the weapon.

The history and characteristics of the defendant must begin with a study of the details of her

prior convictions.

A.  The defendant's criminal record

Her first felony arrest was for robbery and was committed by the defendant in 1992 when she

was 23.

The description of her conduct as found in the presentence report follows:

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline |
|---|---|---|---|
| 01/21/1992 (age 23) | Robbery, Cuyahoga County Court of Common Pleas Case Number CR 277936. | 04/27/1992. Found guilty by jury trial, remanded. 07/02/1992: 3-15 years custody (suspended), 2 years probation, remanded for treatment. 09/17/1993: Violator, original sentence ordered into execution. 06/21/1994: Granted 1 ½ years shock probation. 12/18/1995: Probation extended one year. | 4A1.1(a) |

4

(1:04 cr 345)

12/21/1996: Probation
terminated.

The defendant was represented by counsel.  According to a corresponding presentence report, on 01/21/1992, the defendant was observed by employees of Revco Drug Store attempting to flee with stolen merchandise.  The manager followed the defendant as she left the store.  He attempted to detain the defendant, but she managed to run away after biting him.  Finally, the manager was able to once again catch up with her and escort her back into the store.  Once inside the store, he asked the assistant manager to detain her while he called police.  Once again, the defendant attempted to leave, this time biting the assistant manager.  Another employee heard the commotion and came to the assistance of the manager and assistant manager, but as he walked up, the defendant picked up a pair of scissors, pointed them at him, and stated, "you people gonna treat me like a dog, I'll take care of you".  A short while later, police arrived and placed the defendant under arrest.  They revealed 65 pairs of earrings, miscellaneous cosmetics and other items valued at $400.

In 1996, at the age of 27, the defendant pled guilty to soliciting.

In 1998, at the age of 29, the defendant was convicted of possession of drugs.  The following

commentary is found at paragraph 26 in the presentence report:

The defendant was represented by counsel.  No further information is known.  According to Probation Officer Tracy McCorry, the defendant's overall adjustment to supervision was poor due to her new arrests; however, she noted that the defendant usually reported to the probation office as directed and tested negative for illegal drug use for the 3 years prior to the instant offense.

At the age of 30, in1999, the defendant was found guilty of receiving stolen property.  The

discussion at paragraph 27 indicates a continued use of drugs as follows:

The defendant was represented by counsel.  According to the Indictment, the defendant was charged with being in possession of stolen credit cards and five grams or less of cocaine.  According to Probation officer Tracy McCorry, the defendant's overall adjustment to supervision was poor due to her new arrests; however, she noted that the defendant usually reported to the probation office as directed and tested negative for illegal drug use for the 3 years prior to the instant offense.

(1:04 cr 345)

Again at the age of 30, in 1999, the defendant was convicted of theft with the following

commentary by the probation officer:

The defendant was represented by counsel.  No further information is known.
According to Probation Officer Tracy McCorry, the defendant's overall adjustment to
supervision was poor due to her new arrests; however, she noted that the defendant
usually reported to the probation office as directed and tested negative for illegal drug
use for the 3 years prior to the instant offense.

Two more theft convictions followed in 2000 and 2001.  The 2000 theft conviction involved

stolen merchandise totaling $520.65 from Dillard's Department Store and the 2001 theft resulted in 60

days in jail and being banned from the Beachwood Place Mall.

The final conviction related to a 2002 offense and the description of the offense is repeated in

its entirety as follows:

The defendant was represented by counsel.  The defendant pled guilty to an
amended Count 5 which deleted all specifications and read attempted conspiracy to
commit robbery.  Other counts were nolled.  According to a corresponding
presentence report, on 10/24/02, two male codefendants robbed a female of $10 in a
hotel parking lot in Cleveland, Ohio.  The defendant was the backseat passenger in the
codefendants' vehicle.  The male codefendants demanded money from the female
victim.  One of the codefendants pulled out a gun and forced the victim into the vehicle.
The two male codefendants pulled down her pants, while reaching into same to find
money.  They also searched underneath her blouse, looking for money.  The suspects
eventually took $10 from her before pushing her out of the car.  When the female's
male friend approached to assist the victim, a male codefendant pulled a gun from his
waistband and pistol-whipped the male on the left side of his head.  The suspects then
fled the scene.  Officers responded to the reported robbery and pursued the suspects'
vehicle.  Officers attempted to box the vehicle in twice, both times the codefendant
driver crashed into the police cruiser and continued on.  He also drove on the sidewalk,
knocked over a fire hydrant and smashed into a concrete garbage can, causing the
vehicle to stop.  The defendant remained in the vehicle and was arrested by police.
Officers confiscated a loaded Smith and Wesson .40 caliber handgun from the driver's
side floorboard.

6

(1:04 cr 345)

B.  Personal and Family Data.

The presentence report suggests defendant's dysfunctional experience as a young child as set

forth in paragraph 45 which states:

On 10/09/1968, Lynn Carol Allen was born in Columbus, Ohio, to the union of Lynn
Allen and Robert Foster.  Her parents married when the defendant was 6 years old.
Their relationship was "off and on" due to her father's drug use.  In 2001, her father
died of a drug overdose.  Her parents were separated at the time.  The defendant's
mother abused drugs as well.  She has remained abstinent for the past 17 years.  The
defendant reported that during her childhood, her mother worked a lot.  Her father did
not work or assist the family financially.  There were drugs in the home while she was
growing up, as well as alcohol abuse.  The defendant reported that her mother abused
her and her siblings.  At the age of 15, the defendant left home to live with a boyfriend.
She returned home several times thereafter.

The defendant has given birth to nine children, three have been permanently adopted and the

status of the remaining six children is set forth in paragraph 49 of the presentence report as follows:

The defendant gave birth to nine children; however, three of the children have
been permanently adopted.  Reshawn Foster (age 21) is currently incarcerated on
aggravated robbery charges in Cuyahoga County.  Andre Foster (age 17) resides with
his maternal grandmother, works at Burger King and is going to Life Skills in pursuit of
his GED.  The defendant has custody of Andre.  Abony Franklin (age 15) resides with
the defendant's aunt.  The aunt has custody.  Patricia Patton (age 10) resides with her
paternal grandmother.  The grandmother has custody.  Chance Parker (age 8) resides
with her father, Arthur Parker, at 4518 Lester, Cleveland, Ohio.  Mr. Parker has
custody.  Miracle Austin (age 3) resides with the defendant's husband, Robert Austin
and his mother.  The defendant and her husband both have custody of Miracle.  The
defendant reported that she sees her children on a regular basis.  She explained that she
could have her children returned to her custody; however, since they have been raised
for so long with other family members, she opts to leave them there for their stability.
The children are healthy, with the exception of Miracle.  She was born premature and

(1:04 cr 345)

has asthma.  The defendant reported that Miracle is hyperactive and having difficulty

adjusting since the defendant has been incarcerated.[2]

The defendant reports that she began drinking alcohol at the age of 10 and began smoking

marijuana at the age of 14 and remained a daily user until l998.  She began smoking crack cocaine at

the age of 18 and admits to being addicted to crack cocaine.

The defendant dropped out of high school in the 12th grade and is currently pursuing a GED

status.

The defendant's employment record is set forth in paragraphs 59 through 63 as follows:

For six months in 2003, the defendant worked at a factory through
Ameritemps, Cleveland, Ohio, earning $8.25 hourly.  The job was discontinued.

---

[2]The daughter, Miracle, is now being cared for by the defendant's mother-in-law.  On July 20, 2005, the mother-in-law, Mrs. Dimple Austin, wrote to defendant's counsel regarding her care of Miracle.  The letter states in its entirety as follows:

Dear Mr. Thompson

I am Lynn Foster's mother in law.  I am writing you to let you know the situation that Lynn is in.  I am the caretaker of her 4 year old daughter Miracle.  I am 69 years old, have many health problems, my hearing is going away, I only hear out of my right ear and not too good pretty soon that will be gone.  My doctor cant help none, my equilibrium which is my balance is gone and that's bad.  You can see the shaking in my writing.  Miracle is a very active 4 years and we really need Lynn home to help us out even if she could be on home arrest at least she'll be there to help us out and I'll make sure she follows the rules.  She's a very sweet young lady.

Please Mr. Thompson could you please talk to the Judge for us so she can come home.  She would be a big help, her baby cries a lot saying she wants her mommy.  So could you please, please ask the Judge to show us a little compassion. My health is getting worse.  What little hearing I have left will be gone anytime, seem like I'm floating when I'm walking with a cane.  I hope and pray that he and you could help us.  Thank you.

(1:04 cr 345)

For approximately a year in 1996, she was employed at MidWest Presort, Cleveland, Ohio, earning $6.25 hourly.  She left when she had a child.

From 1994 to 1996 she was employed as a cleaning supervisor at Janco Cleaning Services, Cleveland, Ohio earning $7.50 hourly.  Her job ended when the company lost the contract with Cuyahoga Community College.

The defendant worked often through temporary agencies.  She was most recently supported by welfare.

(2) The Need for the Sentence Imposed

A.  To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

Possession of a firearm by a convicted felon is a serious offense.  The obvious statutory purpose of Section 924(c) is to keep firearms out of the possession of convicted felons because of the recognized recidivism involving convicted felons.  The imposition of prison terms to discourage possession of firearms by convicted felons is calculated to reduce the incidence of violent crimes.  The Court is of the view that a substantial term of imprisonment for the crime of possession of a firearm by a convicted felon will reduce, in some measure, the incidence of violent crimes and provides just punishment for the offense.

B.  To Afford Adequate Deterrence to Criminal Conduct

The Court is of the view and so finds that a substantial term of imprisonment for the defendant will serve as an adequate deterrence to criminal conduct by the defendant and also for other felons who are aware of the defendant's conviction and substantial term of imprisonment.

9

(1:04 cr 345)

C. To Protect the Public From Further Crimes of the Defendant

The defendant is clearly a serial recidivist. However, she has not experienced a lengthy term of imprisonment similar to the term of imprisonment being imposed in this case. Additionally she will be on supervised release for three years upon her release from imprisonment. By the time her term of supervised release is completed, she will be in her forties and there is a strong probability, in the Court's view, that she will conform her conduct, assuming she can defeat her reliance on drugs, to avoid future criminal conduct.

D. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Way

Despite giving birth to nine children, and without a high school diploma, the defendant has maintained employment in a significant way. Against that background, the Court finds that a substantial term of imprisonment will enable the defendant to improve her education and develop new skills that will aid her in finding employment once released from prison.[3]

## IV. Conclusion

Careful consideration of the Section 3553(a) factors, including the defendant's recidivism, her age, her parental responsibilities, her employment efforts, the fact that the firearm involved in her conviction was not used in a separate crime, her efforts while incarcerated to better herself, the fact that

---

[3]The defendant has already made good use of her time while incarcerated at F.C.I. Danbury, and has completed the following programs: "Boundaries in Our Parenting"; "Healthy Relationships"; "Parenting Education"; and "Our Place - AIDS Peer Education". The defendant has also completed 96 hours of the Primary Literacy Program at Danbury.

(1:04 cr 345)

her youngest child, Miracle, needs the care and affection of her mother and the fact that the defendant's

mother-in-law is reaching the end of her ability to care for Miracle, presents a sentencing situation

justifying a sentence that is substantially below the sentencing guideline range of 51-63 months. As a

consequence, and for the reasons herein summarized, the Court reimposes its alternative sentence of 24

months with a period of supervised release for three years.

  IT IS SO ORDERED.


 September 26, 2005       */s/ David D. Dowd, Jr.*
Date             David D. Dowd, Jr.
               U.S. District Judge